**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **BRENDA D. WHITEFIELD,** § | |
| **PLAINTIFF,** § | |
| § | |
| VS. § | **CIVIL ACTION NO. 4:06-CV-007-Y** |
| § | |
| **JO ANNE B. BARNHART,** § | |
| **COMMISSIONER OF SOCIAL SECURITY,** § | |
| **DEFENDANT.** § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A. STATEMENT OF THE CASE

Plaintiff Brenda D. Whitefield brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security that awards her a closed period of disability insurance benefits under Title II of the Social Security Act. Whitefield applied for disability benefits on November 24, 1999, alleging disability beginning May 23, 1996. (Tr. 78). She last met the insured status requirements on December 31, 2002. (Tr. 75).

After the Social Security Administration denied Whitefield's application for benefits both

initially and on reconsideration, Whitefield requested a hearing before an administrative law judge (the "ALJ"). ALJ James Wendland held a hearing in May 2002, and on August 21, 2002, entered a partially favorable decision awarding Whitefield a closed period of benefits commencing May 5, 1997 and ending April 29, 2001. (Tr. 246). On April 5, 2004, the Appeals Council vacated that decision (including the favorable portions) and remanded the case for further development of the record. (Tr. 265).

ALJ Wendland held a supplemental hearing on September 10, 2004, which was attended by Whitefield, her attorney, a medical expert, and a vocational expert. (Tr. 335). On November 4, 2004, the ALJ issued another partially favorable decision awarding Whitefield a closed period of benefits from April 25, 2000 through June 18, 2001. (Tr. 16-31). The Appeals Council denied Whitefield's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 5).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §

404.1520(c). At the third step, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence

is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

   1.  Whether the ALJ's determination that Whitefield did not meet or equal a listing between May 1996 and December 2002 is supported by substantial evidence;

   2.  Whether the ALJ's residual functional capacity assessment is supported by substantial evidence; and

   3.  Whether the Commissioner met her burden to establish medical improvement warranting the cessation or termination of benefits.

D.  ADMINISTRATIVE RECORD

   1.  Medical History

Whitefield saw her primary care physician, Dwayne Shafer, M.D., in 1996 for complaints of back pain. Shafer referred Whitefield to neurologist Richard Hubbard, M.D., for evaluation on May 7, 1996. (Tr. 136). On examination, Whitefield exhibited a normal gait with no muscle tenderness and no sacroiliac joint tenderness. A motor examination was intact and straight leg raising was normal bilaterally. (Tr. 136-37). Magnetic resonance imaging (an MRI) showed mild L5-S1 disk herniation without compression of the nerve roots. There was moderate facet arthritis

at L4 that Hubbard opined might be causing Whitefield's back pain. (Tr. 137). Eletromyography (EMG) and nerve conduction studies were normal. Hubbard recommended a conservative treatment regimen.

Shafer subsequently referred Whitefield to surgeon Joe Wheeler, M.D. Wheeler evaluated Whitefield in December 1996 and ordered a myelogram and computerized axial tomography (CAT) scan. (Tr. 152-53). The diagnostic studies were performed January 6, 1997 and showed a central disc lesion at L5-S1 that indented the thecal sac without deforming the nerve sleeves, and spondylolisthesis[1] at L4-L5. (Tr. 144-51). Whitefield underwent a surgical decompression and spinal fusion at L4-L5 and L5-S1 in May 1997. (Tr. 162-65). On July 21, 1997, Wheeler noted post-surgical improvement in Whitefield's condition. (Tr. 141). An assessment in October 1997 showed good bone formation along the fusion, and Whitefield was released to work on a part-time basis. (Tr. 156). During a check-up on December 18, 1997, Whitefield reported working some and sleeping well. She was taking no medications. A neurological evaluation was intact and she was referred for postoperative rehabilitation services. (Tr. 155).

Whitefield was seen by William Mitchell, M.D., on April 25, 2000 for complaints of progressively worsening back pain that radiated into her legs. (Tr. 185). After reviewing new MRI results, Mitchell opined that additional back surgery would probably be necessary due to pseudoarthrosis or non-union of the previous surgical site. (Tr. 210). On December 8, 2000, Whitefield had a repeat decompression procedure and fusion at L3-L4, L4-L5, and L5-S1. (Tr. 205).

---

[1] Spondylolisthesis is the forward displacement of one vertebra over another. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1563 (28th ed. 1994).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 5**

At her follow-up visits, Whitefield reported feeling better, but still had some back and leg pain. In April 2001, Mitchell found Whitefield was doing well. Straight leg raising was negative, Whitefield reported less pain, and x-rays showed good progress and consolidation of the spinal fusion. (Tr. 204). On June 18, 2001, Whitefield told Mitchell that she had mild discomfort, but in general, she felt better than she had before the surgery. Mitchell prescribed a physical therapy program and Whitefield was scheduled for a follow-up appointment in six months. (Tr. 204). On December 17, 2001, Whitefield reported moderate back and leg discomfort. She continued to take her pain medication once a day, but felt much better than she had before the surgery. X-rays showed good fusion from L4 to the sacrum, and straight leg raising was negative. Mitchell told her to use her pain medication as needed and also ordered epidural steroid injections. (Tr. 204).

Shafer completed a medical source statement dated October 2, 2002. (Tr. 21). He opined that Whitefield could sit, stand, or walk for less than two hours during the workday; lift less than ten pounds; and needed to lie down at unpredictable intervals during the day. (Tr. 325-27). The ALJ found that Shafer's report was not corroborated by contemporaneous treatment records and observed that Shafer had last seen Whitefield in January 2000. (Tr. 21). The ALJ also noted that the opinions Shafer expressed on the form were incompatible with Shafer's reported finding on the date he last examined Whitefield. (Tr. 21).

In addition to her complaints of back pain, Whitefield has sought treatment for benign tremors in her extremities. She was prescribed propanolol for the tremors, and a prescription for myosoline was later added to her treatment regimen. The medication initially provided good results, but the tremors eventually returned. (Tr. 177, 201).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 6**

Medical expert Otto Wilbanks testified during the first administrative hearing held May 28, 2002. Wilbanks opined that Whitefield had two primary medical impairments: her back impairment and an essential tremor. (Supp. Tr. 409). He opined that Whitefield's condition did not meet the criteria of any listed impairment, but he testified that her back condition probably equaled a listing from May 5, 1997 until April 29, 2001 when a normal neurological evaluation was reported. (Supp. Tr. 410-11). Wilbanks testified that Whitefield was limited to light work activity after April 29, 2001. (Supp. Tr. 411).

Whitefield attended a consultative evaluation with neurologist Edwin Green, M.D., on June 25, 2004. (Tr. 308). On examination, Whitefield's muscle strength was assessed as 5/5. She exhibited normal heel-toe and tandem gait, and her sensory examination was also normal. Her reflexes were 2+ bilaterally. (Tr. 309). Green concluded that Whitefield's condition was not disabling, although she was unable to perform occupations where manipulation of small objects was essential. Green recognized that Whitefield's back pain was an issue, and he recommended an MRI to evaluate that problem. (Tr. 309). Green also completed an assessment form on which he indicated that Whitefield was able to perform a limited range of sedentary work. (Tr. 311). Green, however, completed a second assessment form on July 30, 2004, and on this form, he indicated that Whitefield's ability to sit, stand or walk was limited to less than two hours during an eight-hour workday. (Tr. 328).

At the supplemental administrative hearing in 2004, medical expert Charles Murphy testified that Whitefield suffered from a degenerative condition along her lumbar spine. (Tr. 355). He noted that Whitefield underwent her first surgery in May 1997, was released to work on a part-time basis

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 7**

in October 1997, and she had an intact neurological assessment in December 1997. (Tr. 356). The medical records picked up again in April 2000 when she was seen for renewed complaints of back pain. Her second back surgery in December 2000 apparently resulted in a solid fusion. Whitefield's additional problems included obesity and a tremor. (Tr. 356). Murphy testified that Whitefield's impairments did not meet or equal any listing, but he would expect that she had functional limitations as a result of her impairments. (Tr. 356-57).

Murphy opined that there would be a recovery period after her May 1997 surgery that would have rendered Whitefield unable to work until December 1997. (Tr. 357). Murphy also testified that, from December 1997 to April 2000, Whitefield would have been limited to sedentary work with a sit/stand option; no climbing or crawling; occasional postural changes and occasional pushing or pulling; no vibration and no handling of sharp objects. From April 2000 to June 2001, Murphy would again find Whitefield reduced to a less than sedentary level of work, but from June 2001 forward, Whitefield could be expected to return to the same level of sedentary work with the same restrictions that Murphy had previously listed. (Tr. 358).

    2.    ALJ Decision

The ALJ found that Whitefield had not engaged in substantial gainful activity since her alleged onset date of May 23, 1996. He also found that the medical evidence established that Whitefield had severe degenerative disk disease, osteoarthritis, obesity, and an essential tremor; however, the ALJ found that Whitefield had no impairment or combination of impairments meeting or equaling any listed impairment. (Tr. 17). The ALJ also acknowledged a deterioration in Whitefield's condition from May 1997 to December 1997 and again from April 2000 to June 2001;

however, the May 1997 to December 1997 period did not qualify for disability insurance benefits because it failed to meet the 12-month durational requirement. (Tr. 26).

The ALJ found that Whitefield retained the residual functional capacity from May 23, 1996 to April 25, 2000 for sedentary work activity that was limited to occasional stooping, balancing, crouching or kneeling; no crawling or climbing; sitting for no more than thirty minutes at a time without the opportunity to stand; no more than occasional performance of extended, repetitious reaching with the upper extremities; no pushing or pulling with the feet; no more than frequent handling or fingering of objects; no working at unguarded heights or around hazardous mechanical equipment; pushing or pulling no more than ten pounds with the upper extremities; no working with sharp objects; and no working with vibrating equipment. (Tr. 26). The ALJ further found that from June 18, 2001 through her date last insured, Whitefield experienced medical improvement and regained the residual functional capacity for sedentary work with the same foregoing restrictions. (Tr. 28). When these limitations were presented in the form of a hypothetical to vocational expert Carol Bennett, Bennett testified that there were jobs that would accommodate those limitations. Examples included receptionists (with approximately 33,000 jobs in the national economy); appointment clerk (with approximately 180,000 jobs in the national economy); and check cashier (with approximately 600,000 jobs in the national economy). (Tr. 29, 368).

Accepting the vocational expert's testimony, the ALJ found that work existed in significant numbers that Whitefield could have performed between May 23, 1996 and April 25, 2000, and again between June 18, 2001 and December 31, 2002 despite her impairments. (Tr. 30). The ALJ concluded that Whitefield was under a disability for a closed period between April 25, 2000 and

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

June 18, 2001 and was entitled to disability insurance benefits for that period only. (Tr. 30-31).

E.   DISCUSSION

   1.   Medical Equivalence

Whitefield contends that the ALJ's determination that she was disabled and entitled to disability insurance benefits only for a closed period from April 25, 2000 to June 18, 2001 is not supported by substantial evidence. More specifically, Whitefield contends that the ALJ's determination is contrary to the testimony that medical expert Wilbanks provided during the first administrative hearing in 2002. Wilbanks had opined that Whitefield's back condition did not meet, but did medically equal the severity of listing 1.04A[2] from May 5, 1997 through April 29, 2001. The ALJ accepted this testimony in his first administrative decision, but the Appeals Council vacated that decision and remanded the claim for further development.[3] In his second decision, the ALJ

---

[2] Listing 1.04 addresses the criteria for presumptively disabling spinal disorders:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Part 404, Subpart P, app. 1, § 1.04A.

[3] Although recognizing that the ALJ's decision was based on medical expert testimony of equivalency, the Appeals Council nonetheless found that

> the record does not document subsequent treatment for back pain from December 1997 until April 2000. The Appeals Council concludes that further evaluation of the nature and severity of the claimant's back impairment is necessary, in light of the normal neurological examinations, the evidence of work activity and the lack of treatment for much of the period during which the claimant was found to have impairments of listing level severity.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

found that Whitefield had no impairment meeting or equaling a listed impairment at any time before her insured status expired, although he did find Whitefield had been restricted to a less than sedentary range of work activity for several months in 1997 and again from April 25, 2000 to June 18, 2001. The ALJ did not refer to Wilbanks' testimony in arriving at this decision, but instead relied on the testimony that medical expert Murphy gave during the supplemental administrative hearing.

Whitefield contends that the ALJ was obligated to weigh Wilbanks's opinion in accordance with the administrative rulings and regulations, and further complains that the ALJ should have reconciled the conflict between Wilbanks' and Murphy's opinions. *See generally* 20 C.F.R. § 404.1527. The Commissioner asserts that the ALJ had no obligation to consider Wilbanks' testimony because the Appeals Council had vacated the previous decision and remanded the case for further development. The Commissioner also notes that conflicts in the evidence, including the medical evidence, are to be resolved by the ALJ, not the court. *See Carry v. Heckler*, 750 F.2d 479, 483 (5th Cir. 1985).

The court can find no authority that suggests that the Appeals Council's action in vacating the previous ALJ decision somehow nullified Wilbanks' medical source opinion, and nothing in the Appeals Council's written order suggests that Wilbanks' opinion was not to be considered on remand. To the contrary, the applicable regulations require the Commissioner to consider every medical opinion received, regardless of its source. 20 C.F.R. § 404.1527(d). The regulations also

---

(Tr. 266). The Appeals Council instructed the ALJ to reevaluate Whitefield's impairments and her maximum RFC for the entire period under consideration. (Tr. 266).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**

provide that the Commissioner will consider medical source opinions that address whether an impairment meets or equals a listed impairment, although the Commissioner is responsible for deciding the ultimate legal question of whether a listing is met or equaled. 20 C.F.R. § 404.1526(e); Social Security Ruling 96-6p. The ALJ made no reference to Wilbanks' previous opinions and did not indicate that he had compared or reconciled the conflicting testimony of the two medical experts, which impedes the court's ability to review the basis for the Commissioner's decision.

Although the Commissioner now asserts that substantial evidence supports the ALJ's determination that Whitefield did not meet or equal the Listing for spinal disorders, the court declines to engage in post hoc reasoning to excuse the ALJ from the task of considering all medical source opinions in the record. The case should be reversed and remanded so that the Commissioner may consider all of the evidence relevant to Whitefield's disability status from May 5, 1997 to April 25, 2000.

2. Residual Functional Capacity[4]

Whitefield asserts that substantial evidence does not support the ALJ's assessment of her residual functional capacity (RFC) for a modified range of sedentary work because this assessment is contradicted by the medical source statement that Green issued on July 30, 2004 in which he opined that Whitefield was unable to sit, stand, and/or walk for a full eight hours during the workday. The ALJ reviewed Green's consultative evaluation, which revealed few positive findings,

---

[4] Remand in this case is appropriate so that the ALJ can consider all of the medical source opinions in the record that relate to Whitefield's disability status before April 25, 2000. Depending on the outcome of her review of the relevant medical source opinions, the Commissioner may find it necessary to revisit the issue of Whitefield's RFC before April 25, 2000.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 12**

and Green's initial opinion that Whitefield was capable of sedentary work activities if she was able to alternate between sitting and standing and performed reaching activities no more than frequently. (TR. 22). The ALJ also reviewed Green's second statement, but attributed that statement to Whitefield's treating neurologist. The ALJ found that this second medical source statement and the functional limitations identified therein were not corroborated by treatment records before December 31, 2002 when Whitefield's insured status expired, and accordingly, declined to afford controlling weight to that opinion. (Tr. 22-23).

Whitefield asserts that the ALJ did not give adequate consideration to the medical source statement because he misunderstood the source of the opinion. Whitefield, however, cannot establish prejudice as a result of the ALJ's misunderstanding. As the Commissioner points out, the ALJ thought the opinion was from a treating source. Treating source opinions are generally entitled to more weight under the regulations than opinions from other medical sources. *See* 20 C.F.R. § 404.1527(d)(2). At most, the ALJ gave the medical source statement more consideration than it would otherwise deserve. Moreover, Whitefield has not demonstrated that the explanation that the ALJ gave for rejecting the opinion, i.e., a lack of supporting treatment records from the relevant time period, is not equally accurate or applicable if the ALJ had correctly identified Green as the author.

3.      Medical Improvement

Whitefield also contends that the administrative record does not support a finding of medical improvement in her condition as it relates to her ability to work after June 18, 2001.[5] Congress has

---

[5] The court notes that the issue of medical improvement is not affected by the ALJ's failure to weigh the opinions of medical expert Wilbanks because Wilbanks testified that Whitefield's impairments equaled the severity of a presumptively disabling listed impairment only through April 29, 2001, and he opined that thereafter she

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 13**

established specific standards for the termination of disability benefits. As relevant here, termination requires substantial evidence demonstrating (1) medical improvement related to the individual's ability to work, and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. §§ 423(f)(1), 1382c(a)(4)(A). Medical improvement is any decrease in the medical severity of impairments present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs or laboratory findings associated with the relevant impairments. 20 C.F.R. § 404.1594(b)(1). Medical improvement is related to the ability to work if there has been a decrease in the severity of the impairments present at the time of the most recent favorable medical decision and an increase in the claimant's functional capacity to do basic work activities.[6] 20 C.F.R. § 404.1594(b)(3).

To execute Congress's intent, the Commissioner has implemented an eight-step process for evaluating a possible termination of benefits:

1. Is the claimant engaged in substantial gainful activity?

2. If not, does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of the regulations:

3. If not, has there been medical improvement?
4. If there has been medical improvement, is it related to the claimant's ability to do work?

---

regained the ability to perform light work activity. (Supp. Tr. 411).

[6] Basic work activities are the abilities and aptitudes necessary to do most jobs. Basic exertional work activities include walking, standing, pushing, pulling, reaching and carrying. 20 C.F.R. § 404.1594(b)(4).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 14**

> 5. If there has been no medical improvement or the medical improvement is not related to the claimant's ability to do work, is an exception applicable?
>
> 6. If there has been medical improvement related to the claimant's ability to do work (or one of the first group of exceptions to medical improvement applies), are the claimant's current impairments severe?
>
> 7. If so, is the claimant able to engage in past relevant work?
>
> 8. If not, is the claimant able to perform other substantial gainful activity?

20 C.F.R. § 404.1594(f); *Griego v. Sullivan*, 940 F.2d 942, 944 n.1 (5th Cir. 1991). The burden of proof is on the Commissioner to demonstrate that a cessation or termination of benefits is appropriate. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Griego*, 940 F.2d at 944.

Whitefield asserts that the Commissioner has failed to meet her burden to demonstrate medical improvement for purposes of terminating Whitefield's disability benefits effective June 18, 2001. (Tr. 28). The ALJ expressly found medical improvement in Whitefield's condition, but Whitefield contends that the ALJ did so by disregarding Green's opinion that Whitefield remained unable to perform the basic work activities of sitting, standing, and walking. The ALJ considered Green's opinion, although he attributed it to a treating source instead of the consultative examiner, and decided it was not supported by Whitefield's treatment history. The ALJ also relied on the medical expert's testimony that Whitefield had regained the ability to perform a modified range of sedentary work by June 2001. (Tr. 28). That determination is likewise supported by Whitefield's treatment records that reflect the success of her second surgery with relatively minimal findings during her follow-up visits with treating sources. The Commissioner met her burden to establish that cessation of Whitefield's benefits after June 18, 2001 was appropriate.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 15**

RECOMMENDATION

It is recommended that the decision of the Commissioner with respect to Whitefield's disability status between May 5, 1997 and April 25, 2000 be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions. The Commissioner's decision should otherwise be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until December 18, 2006. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 16**

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until December 18, 2006 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED NOVEMBER 28, 2006.

/s/ Charles Bleil
_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE